UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEATHER HASTAY,    )<br>      Plaintiff              )<br>                                  )<br>V.                                )<br>                                  )<br>MATTHEW HOLDEN, et. al )<br>      Defendant,            )<br>                                  ) | Civil Action No. 22 CV-10439 AK |

DEFENDANT MATTHEW HOLDEN'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant Matthew Holden is a Massachusetts State Police Officer. This action arises out of his arrest of the Plaintiff, Heather Hastay, for operating her motor vehicle under the influence of alcohol. Holden has moved for summary judgment on Plaintiff's claims that her arrest was without probable cause.

**STATEMENT OF FACTS[1]**

On May 9, 2019, Holden began work at 11:00 PM. He was assigned to patrol an area that included Route 139 in Marshfield, Massachusetts. Ms. Hastay admits to having two glasses of Malibu Rum "with a splash of coke" at the Ming Dynasty Restaurant, which is on Route 139 in Marshfield. She states she left the restaurant a little after 11:00 PM but sat in the parking lot for a while before driving her car on to Route 139. Shortly thereafter she was stopped by Tpr. Holden.[2] Ms. Hastay pulled into a nearby parking lot.

---

[1] This summary is taken from Defendant's Statement of Undisputed Material Facts filed with his Motion for summary judgment.
[2] There is some dispute as to whether the stop was before or after midnight, but the time of the stop is irrelevant to the issues here. The log kept by the State Police Barracks in Norwell records that Tpr. Holden radioed at 12:48 AM on May 10, 2019 that he had Ms. Hastay under arrest for OUI alcohol.

1

Tpr. Holden approached Ms. Hastay's car and spoke with her. Ms. Hastay admits that she emitted a strong odor of alcohol ant that Tpr. Holden would smell the odor of an alcoholic beverage on her breath "100 percent". When asked, Ms. Hastay first said she told Tpr. Holden that she had a couple of drinks, later stating that it was two drinks.

Tpr. Holden asked Ms. Hastay to take a field sobriety test. She agreed "100%" to take the tests. Hastay admits that she failed the walking test "horribly", and that she failed the next test. She testified that, "overall, I failed the field sobriety test", …"I did fail, like, the field sobriety test." That night she told her father that she failed a ten step and turn test, had a problem with a numbers test and maybe a problem with standing on one foot.

Holden's initial observation of Hastay was that her eyes were glassy and blood shot, that she took an extremely long time to find her license and registration, and that she slowly and methodically went through a few cards to find her license. Holden observed that Ms. Hastay showed signs of intoxication using the Horizontal Gaze Nystagmus. Holden believed that Hastay was under the influence of alcohol and placed Hastay under arrest for operation of a motor vehicle while under the influence of alcohol.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party "may not rest upon the mere allegations or denials of [his] pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of fact exists where "the evidence about the fact is such that a reasonable jury could resolve the point in favor of

the nonmoving party" United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir.1992). A fact is "material" if it is "one that might affect the outcome of the suit under the governing law." Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir.1994). The Court will ignore "`conclusory allegations, improbable inferences, and unsupported speculation. Fiacco v. Sigma Alpha Epsilon Fraternity, 528 F.3d 94, 99 (1st Cir., 2008).

## **THERE WAS PROBABLE CAUSE TO ARREST THE PLAINTIFF**

Count One of Ms. Hastay's Amended Complaint is an action under 42 U.S. C. section 1983 alleging that Tpr. Holden violated her Fourth Amendment rights when he stopped her motor vehicle and subsequently when he arrested her. Count Two recites the same claims but is for an action under the Massachusetts Civil Rights Act.

The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964); Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989). Conversely, a warrantless arrest made with probable cause is constitutionally reasonable and does not violate the Fourth Amendment. Virginia v. Moore, 553 U.S. 164, 171, 176, 128 S. Ct. 1598, 1604, 170 L. Ed. 2d 559 (2008)

.    In Beck, the Court set forth the standard of probable cause to arrest:

Whether [an] arrest was constitutionally valid depends...upon whether, at the moment the arrest was made, the officers had probable cause to make it - whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense...

[Moreover,] [t]he rule of probable is a practical, nontechnical conception affording the best compromise that has been found for accommodating

3

> ...often opposing interests.  Requiring more would unduly hamper law enforcement.

Beck, 379 U.S. at 91; see also, Illinois v. Gates, 462 U.S. 213 (1983) (Only probability and not a prima facie showing of criminal activity is the standard of probable cause). "Probable cause exists if a reasonable person in the officer's position would believe that a person committed a crime." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009).  An officer's determination of probable cause requires only objective reasonableness.  Id.

Massachusetts common law additionally requires that an officer have "reasonable grounds" for making an arrest.  Coblyn v. Kennedy's Inc., 359 Mass. 319 (1971).  The state law standard of "reasonable grounds" has been found to substantially overlap with the constitutional requirement of "probable cause."  Id.; Santiago v. Fenton, 891 F.2d at 383; Wagenmann v. Adams, 829 F.2d 196, 206 (1st Cir. 1987); Hall v. Ochs, 817 F.2d 920, 926 (1st Cir. 1987).

M.G.L. c. 90, section 24(1)(a)(1) makes it a crime to operate a motor vehicle on a public way while under the influence of an intoxicating liquor.  "[T]he phrase 'under the influence' refers to impairment, to any degree, of an individual's ability to safely perform the activity in question." Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016).

Here, Ms. Hastay admits that she left a restaurant just before she was stopped.  She testified that she told Tpr. Holden that she had a couple of drinks and then changed it to two alcoholic drinks.  In her deposition she volunteered that she emitted a strong odor of alcohol when she spoke to Tpr. Holden that he would have been able to detect.  She agreed to take a field sobriety test and agrees that it was warranted.  Ms. Hastay

specifically admits to failing what she terms the walking test that was part of the field sobriety tests, and states that she failed the next test. At two different points in her deposition Ms. Hastay stated that she failed the field sobriety test. She told her father that she failed three parts of the test.

Field sobriety tests are a tool commonly used by police officer to help them assess whether a driver is impaired. The failure to successfully perform field sobriety tests is cited as a basis for establishing probable cause to arrest in countless cases. See e.g. United States v. Cronin, No. 10-02214-MBB, 2012 WL 4888421, at *8 (D. Mass. Oct. 12, 2012) (Probable cause for an arrest can be obtained from field sobriety tests done by a police officer.); Finucane v. Town of Belchertown, 808 F. Supp. 906, 910 (D. Mass. 1992); Winfield v. Town of Andover, 305 F. Supp. 3d 286, 295 (D. Mass. 2018) Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324, 204 N.E.3d 395, 399 (2023)

Observations of and statements by the driver are frequently cited as supporting the existence of probable cause to arrest for operating under the influence of alcohol. Com. v. Rivet, 30 Mass. App. Ct. 973, 975 (1991) (Odor of alcohol on driver's breath, admission to drinking one beer and glassy eyes); Winfield v. Town of Andover, 305 F. Supp. 3d 286, 295 (D. Mass. 2018) (Odor of alcohol, admission to drinking alcohol, and failure of three field sobriety tests): Commonwealth v. Eckert, 431 Mass. 591, 600 (2000) (Slurred speech, bloodshot eyes and odor of alcohol gave probable cause to arrest).. Massachusetts allows police officers to testify regarding their opinion of a person's sobriety. Com. v. Canty, 466 Mass. 535, 540, 998 N.E.2d 322, 327 (2013). In Commonwealth v. Blais, 428 Mass. 294, 296, 701 N.E.2d 314 (1998) the Court stated that red and glassy eyes, an odor of alcohol and slurred speech were sufficient to provide

not just reasonable cause for field sobriety tests, but to provide probable cause to arrest for operating under the influence of alcohol.

In Miller v. Harget, 458 F.3d 1251 (11th Cir. 2006) the Court found that there was probable cause to arrest based solely on an odor of alcohol and refusal to take a breathalyzer, and that the odor of alcohol alone was sufficient to provide a reasonable suspicion justifying the request to exit the car and take a breathalyzer. The prosecutor subsequently dismissed the OUI arrest, and the plaintiff was acquitted of traffic law violations. The plaintiff disputed much of the arresting officer's testimony including whether he had been, or had admitted to, drinking alcohol. The Court held that the acquittals and dismissals were not relevant to the issue of whether there was probable cause at the time of the arrest. The Court also held that probable cause existed regardless of whether there had been a traffic law violation, and granted summary judgment on the plaintiff's claims for Fourth Amendment violations.

In Vondrak v. City of Las Cruces, 535 F.3d 1198 (10th Cir. 2008) the Court found that an odor of alcohol and admission to drinking one beer three to four hours earlier gave rise to a reasonable suspicion that the driver was under the influence of alcohol. The Court therefore found that the officer was entitled to qualified immunity as to a claim that the driver's Fourth Amendment rights were violated by requiring him to perform field sobriety tests. Notably, breathalyzer and blood alcohol tests performed subsequent to the arrest both produced zero results for alcohol.

Here, Ms. Hastay admitted to having been at a restaurant where she had two glasses of Malibu rum. She admits that she emitted a strong odor of alcohol when she spoke to Tpr. Holden. She agreed to take the field sobriety test which, in her deposition,

she stated that she failed. In particular, she stated that she failed the "walking test" "horribly", and that she failed at least one more test. When her father picked her up from the State Police barracks that night she admitted to failing three field sobriety tests. Those factors were enough to allow a "prudent" person to believe that Ms. Hastay was impaired due to drinking alcohol even without Tpr. Holden's observations that Ms. Hastay's eyes were glassy and blood shot and that she showed signs of intoxication using the Horizontal Gaze Nystagmus. Ms. Hastay has no evidence that her eyes were not glassy or blood shot or that she did not show signs of intoxication using the Horizontal Gaze Nystagmus test. There is no dispute regarding the fact that she was driving on a public road.

Ms. Hastay may dispute that she failed all of the field sobriety tests. However, she cannot change her deposition testimony in which she acknowledged overall that she failed the field sobriety tests. Moreover, as the above cases demonstrate, probable cause to believe a person is under the influence of alcohol does not depend on how many of the field sobriety tests they fail, or even that whether they fail any of the tests. Field sobriety tests are just one tool to assist in forming an opinion as to whether the person is under the influence.

Ms. Hastay cannot contend that her rights were violated by the request that she perform field sobriety tests. "…the Fourth Amendment does not prohibit an officer from requesting that a citizen conduct sobriety tests and from administering those tests when the citizen voluntarily assents." Blackstone v. Quirino, 309 F. Supp. 2d 117, 126 (D. Me. 2004) citing United States v. Hornbecker, 316 F.3d 40, 44–45 (1st Cir. 2003). Ms. Hastay agreed to the tests and concedes that there was a basis for having her do field

7

sobriety tests. Moreover, requiring a driver to perform field sobriety tests requires only a reasonable suspicion that the driver is under the influence of alcohol. United States v. Maher, 454 F.3d 13, 18 n. 5 (1st Cir.2006); Com. v. Perachio, 61 Mass. App. Ct. 591, 593–94, 812 N.E.2d 1241, 1242–43 (2004); Commonwealth v. Blais, 428 Mass. 294, 298, 701 N.E.2d 314 (1998). See Byrnes v. City of Manchester, NH, 848 F. Supp. 2d 146, 162 (D.N.H. 2012) (Glassy and bloodshot eyes, odor of alcohol and admission to drinking gave reasonable basis to investigate OUI); United States v. Caine, 517 F. Supp. 2d 586, 589 (D. Mass. 2007); (reasonable to assume bloodshot and glassy eyes were from drinking when driver admitted to drinking alcohol); Wilder v. Turner, 490 F.3d 810, 815 (10th Cir. 2007) (Moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements provided reasonable suspicion to request driver to take breathalyzer.); United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999)(Faint odor of alcohol and admission to drinking one beer gave reasonable suspicion sufficient to justify request to take breathalyzer); Sjoberg v. Kansas Dep't of Revenue, 261 P.3d 569, pg. 4 (Kan. Ct. App. 2011) (Holding "…that the odor of alcohol combined with an admission of drinking and some observation that the appearance of the defendant's eyes had been affected provides a reasonable basis for further detention for investigation of a potential DUI offense.")

Ms. Hastay may argue that the field sobriety test and Tpr. Holden's observations of her are inadmissible since a jury could find that her license plate light was not out and therefore that there was no basis to stop her. That argument is inapplicable to a civil action.

> The exclusionary rule and its extension are, however, a judicial created remedy developed in the context of criminal proceedings. The Supreme Court has

> repeatedly declined to expand the exclusionary rule to non-criminal contexts. See United States v. Janis, 428 U.S. 433, 454 & n. 28, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (civil tax proceedings); Stone v. Powell, 428 U.S. 465, 493, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (habeas proceedings); United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (grand jury proceedings); INS v. Lopez–Mendoza, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (INS deportation proceedings); see also Vigeant v. United States, 245 Fed.Appx. 23, 24–25 (1st Cir.2007) (state law tort claims).
>
> Similarly, the "fruit of the poisonous tree" doctrine cannot appropriately be applied in the context of § 1983 claims. The doctrine is a remedial mechanism designed to deter future unlawful police conduct and [to] protect liberty by creating an incentive—avoidance of the suppression of illegally seized evidence—for state actors to respect the constitutional rights of suspects. Townes v. City of New York, 176 F.3d 138, 145 (2d Cir.1999) (quoting Calandra, 414 U.S. at 348, 94 S.Ct. 613). If imported into the context of § 1983 claims, the doctrine would "vastly overdeter state actors." Id. at 146.

Campbell v. Casey, 166 F. Supp. 3d 144, 150–51 (D. Mass. 2016). Townes held that 42 U.S.C. §1983 did not provide damages where there was probable cause to arrest despite a determination that there was no basis for the initial detention. In Machado v. Weare Police Dep't, 494 F. App'x 102, 104 (1st Cir. 2012) evidence had been suppressed in a criminal case after a court held that the initial traffic stop was improper. The First Circuit held that the exclusionary rule did not apply to a subsequent civil suit brought under 42 U.S.C section 1983. In Martin v. Marinez, 934 F.3d 594, 598 (7th Cir. 2019) evidence was suppressed and criminal charges dismissed after a determination that there was no basis for the initial traffic stop. Citing Townes and a number of other cases, the Seventh Circuit held that "the fact that the evidence was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers." Id. The Court stated that the existence of probable cause foreclosed a Fourth Amendment claim for false arrest. Similarly, it was held that a plaintiff whose criminal charges were dismissed could recover only the nominal damages arising from the minor invasion of

privacy occasioned by the stop of his car where his arrest was based on probable cause. Kennedy v. City of New York, No. 11-CV-1451 ERK SMG, 2013 WL 3490351, at *4 (E.D.N.Y. July 10, 2013), aff'd, 570 F. App'x 83 (2d Cir. 2014)

Nor does the fact that Ms. Hastay subsequently registered a zero reading on a breathalyzer have any bearing on the determination of probable cause at the time of her arrest. In Finucane v. Town of Belchertown, 808 F. Supp. 906, 910 (D. Mass. 1992) a woman was arrested for driving while under the influence of alcohol based on her admitting to having *one* alcoholic beverage earlier that night, a failure to perform some of the field sobriety tests, and the officers' observations that the driver had bloodshot and glassy eyes. She later registered a zero on a breathalyzer administered at the police station indicating "there was no trace of alcohol in her system." Id. at 909  The Court stated:

> The fact that the breathalyzer test indicated that plaintiff was not under the influence of alcohol does not affect the conclusion that plaintiff's arrest was supported by probable cause.

Id. at 910.

Finally, Ms. Hastay may argue that she should have been released more quickly after the breathalyzer results. Ms. Hastay entered the barracks at 1:11 AM and was released at 2:05 AM, a total of fifty-four minutes. Since there was another individual under arrest and being given a breathalyzer Ms. Hastay was placed in a separate room for a short period of time. The other individual was released at 1:19 AM. Ms. Hastay was then allowed to use the rest room after which she was asked to take off jewelry and her belt. An initial booking was conducted. The breathalyzer was readied and then given. She was released because a statute provides for the release of any person registering less

10

than a .05 on the breathalyzer. She alleges she was assaulted before the breathalyzer, not that it delayed her release. Given that her entire detention at the State Police barracks lasted fifty-four minutes there is no evidence of any undue delay in releasing her. Therefore, it cannot be argued that there was any Fourth Amendment violation from the time the breathalyzer was finished until the time she was released.

Since there was probable cause to arrest Ms. Hastay for operating her car while under the influence of alcohol, there was no Fourth Amendment violation and Tpr. Holden is entitled to summary judgment on her claim in Count One of her Complaint alleging that her arrest violated her Constitutional rights.

## QUALIFIED IMMUNITY

Tpr. Holden is entitled to summary judgment on the basis that he has qualified immunity for any alleged Constitutional violation arising out of his arrest of Ms. Hastay. The test for qualified immunity is:

> (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation. The second prong, in turn, has two parts. We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.

Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Assuming, arguendo, that there is a question as to the existence of probable cause, a reasonable police officer with knowledge of the uncontested facts would believe he had the right to arrest Ms. Hastay and therefore would not have known that his conduct violated the Fourth Amendment.

The cases cited in the preceding section of this brief list a variety of circumstances that a police officer may consider to reasonably believe that person is under the influence of alcohol. There is no bright line as to how many tests or observations are necessary to form that opinion. Many cases cite admissions to consuming alcohol and the odor of alcohol as evidence of intoxication. Cases frequently recite the failure of one or more field sobriety tests, but no case establishes that it has to be a certain number or that failing some tests and passing others is dispositive. The case law also establishes that police officers can rely on their observations, including bloodshot and glassy eyes. In Wilder v. Turner, 490 F.3d 810, 815 (10th Cir. 2007) the arresting officer was entitled to qualified immunity for an operating under the influence arrest since he observed a moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements and the driver refused to take field sobriety tests.

The Massachusetts Supreme Judicial Court has held that the doctrine of qualified immunity developed under 42 U.S.C. Section 1983 applies to claims brought under the Massachusetts Civil Rights Act. Duarte vs. Healy, 405 Mass. 43, 46-47 (1989) (citations omitted). Since the undisputed facts would allow a reasonable police officer to believe that Ms. Hastay was driving her car under the influence of alcohol Tpr. Holden is entitled to qualified immunity for her claims that her stop and her arrest violated the Fourth Amendment or were actionable under the Massachusetts Civil Rights Act.

**THE INITIAL MOTOR VEHICLE STOP DID NOT
VIOLATE MS. HASTAY'S FOURTH AMENDMENT RIGHTS**

There can be no doubt that a police officer has the right to stop a motor vehicle for violation of a law relating to the operation of a motor vehicle on a public way. M.G.L. c.90, section 6 requires motor vehicles to have a lighted license plate light.

> …during the period when the vehicle or trailer is required to display lights the rear register number (license plate) shall be illuminated so as to be plainly visible at a distance of sixty feet.

Id. Police offices who observe a traffic violation have the right to stop a motor vehicle. United States v. Fernandez, 600 F.3d 56, 59 (1st Cir. 2010); Commonwealth v. Garcia, 34 Mass.App.Ct. 645 (1993) (Defective license plate light).

Here, Tpr. Holden stopped Ms. Hastay because her license plate light was not properly illuminated. That failure is a traffic violation which allowed him to make that stop without violating any Fourth Amendment rights. Ms. Hastay is likely to assert that her license plate light was working when she and her father looked at it the next day after picking the car up from where it was towed. Accepting that testimony, arguendo, for this motion, it does not establish that the license plate light was working at the time of the stop. Moreover, it does not establish that the illumination was sufficient so that the license plate number was "plainly visible at a distance of sixty feet". Therefore, Ms. Hastay has no evidence to contradict the fact that her license plate light was not sufficiently illuminated. Tpr. Holden is entitled to summary judgment on her claim in Count One of her Complaint alleging that her stop violated her Constitutional rights.

## **CLAIMS UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT**

Count Two of the Amended Complaint mirrors Count One but alleges a violation of the Massachusetts Civil Rights Act (MCA).

> "To state a claim under the MCRA, a plaintiff must show that (1) [her] exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (citing Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337 (Mass. 1996) ). "The MCRA is coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action

whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation, or coercion." Sietins v. Joseph, 238 F. Supp. 2d 366, 375 (D. Mass. 2003) (quotations and citations omitted).

Brown v. Butler, No. 3:17-CV-30030-MAP, 2017 WL 9673712, at *12 (D. Mass. Dec. 22, 2017).  Ms. Hastay's claims that her stop and arrest are actionable under the MCRA fail for the same reasons set forth above.  Her arrest was made upon probable cause and her stop was made for a traffic law violation.  Tpr. Holden is therefore entitled to summary judgment on those claims under Count Two of the Amended Complaint.

        Respectfully submitted,
        Defendant Matthew Holden,
        By his attorneys

        ___/s/ Brian Rogal_____
        Brian Rogal, Esquire
        BBO # 424920
        Rogal & Donnellan, P.C.
        100 River Ridge Drive, Suite 203
        Norwood, MA 02062
        (781)-255-1200
        (781) 255-7750  Fax
        brogal@rogalanddonnellan.com

Certificate of Service

      I certify that I have served the foregoing document on each other counsel of record via the Court's ECF system.

October 23, 2023                               ___/s/ Brian Rogal_____